**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

THE UNITED STATES OF AMERICA

      v.                                                      No. 1:21-cr-41-JL-01

ARIA DIMEZZO

<u>MOTION TO AMEND CONDITIONS OF RELEASE</u>

The Accused, Aria DiMezzo, requests that the Court modify her conditions of release so that she may continue to co-host the talk show, Free Talk Live, as she did prior to the start of this case, with co-defendant Ian Freeman. The condition of release which bars any contact between Ms. DiMezzo and Mr. Freeman violates the First Amendment rights of Free Association and Free Speech.

**MS. DIMEZZO'S CONDITIONS OF RELEASE RESTRICT HER FROM ASSOCIATING WITH OTHERS AND FROM ENGAGING IN FREE SPEECH.**

Ms. DiMezzo is charged with one count of Conspiracy to Operate an Unlicensed Money Transmitting Business and one count of Operating an Unlicensed Money Transmitting Business. She maintains her innocence and has pleaded not guilty.

For the last several years, Ms. DiMezzo has been a co-host, content contributor, and co-manager of a talk show. The show is called Free Talk Live ("FTL"). It is open to the public and is available online at www.freetalklive.com and on approximately 200 affiliate radio stations. *See* www.freetalklive.com/affiliates. FTL airs for three hours, seven nights a week. Recordings of past shows are available online at www.freetalklive.com/archives .

FTL is a "talk radio" show. It is open for members of the public to call in, express their ideas, and talk to the hosts of the show. The hosts and callers routinely discuss a

1

wide variety of topics, including social issues, politics, news, philosophy, literature, the government, individual rights, social media, and other similar matters.

Like Ms. DiMezzo, Ian Freeman is a regular co-host, content contributor, and co-manager of FTL. Ms. DiMezzo and Mr. Freeman often co-hosted shows together until the start of this case. They routinely hosted the show from the same physical location in Keene, New Hampshire.

At her initial appearance, Ms. DiMezzo was released on conditions which include the condition that she:

> Shall: . . . Avoid all contact, directly or indirectly, with any persons who are or who may become a victim or potential witness in the subject investigation or prosecution, including but not limited to: Ian Freeman, Colleen Fordham, Renee Spinella, Andrew Spinella, Richard Paul and other names/spellings listed in the Indictment.

(the "no contact provision").

Since her release, Ms. DiMezzo has continued to work as a co-host of FTL. Until recently, the prohibition against contact with Mr. Freeman did not create an issue because Mr. Freeman was detained in custody and could not appear on FTL as a co-host. However, Mr. Freeman has now been released on conditions. He has returned as a co-host on the show. In light of the no contact provision, Ms. DiMezzo and Mr. Freeman have, of course, avoided any contact with each other, including hosting the show together. Thus, they have not been able to exercise their rights to appear together and to speak to each other about any issue on the air on FTL because of their conditions of release.

Ms. DiMezzo now seeks to amend her conditions of release so that she and Mr. Freeman may co-host FTL and communicate as necessary as co-hosts. As explained

below, Ms. DiMezzo asserts that the no contact provision serves no legitimate purpose and violates her First Amendment rights. Mr. Freeman is expected to join this motion. The Government objects to this motion.

## THE NO CONTACT PROVISION IS UNCONSTITUTIONAL.

> At the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern. "The freedom to speak one's mind is not only an aspect of individual liberty -- and thus a good unto itself -- but also is essential to the common quest for truth and the vitality of society as a whole." *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 503-504 (1984).

*Hustler Magazine v. Falwell*, 485 U.S. 46, 50-51 (1988).

Yet, a defendant facing trial may be subjected to conditions necessary to ensure the defendant's presence at trial or to protect the community. *See Bell v. Wolfish*, 441 U.S. 520, 536 (1979); *United States v. Salerno*, 481 U.S. 739, 754 (1987); *United States v. Patriarca*, 948 F.2d 789, 791 (1st Cir. 1991). Conditions of release, including a no contact provision prohibiting communication or association with particular persons, are authorized by statute. *See* 18 U.S.C. § 3142 (c)(1)(B)(iv) and (v).

The question here is whether prohibiting Ms. DiMezzo and Mr. Freeman from having contact to exercise their First Amendment rights to host FTL is necessary to protect the community or ensure their presence for trial. A review of the case law confirms that the answer is "no" and that the no contact provision in this case is unconstitutional.

*Cases Addressing Conditions of Release*

There are not many court decisions which address the conflict between conditions of pretrial release and the First Amendment. One First Amendment scholar has written that he could find no "Supreme Court or appellate case dealing specifically with speech-

3

restrictive pretrial release conditions." Eugene Volokh, *Pretrial Release Condition: Can't Speak About "the [Capitol] Protest or the Matters Related to the United States Government*, Volokh Conspiracy (Jan. 24, 2021, 11:41AM), https://reason.com/volokh/2021/01/24/pretrial-release-condition-cant-speak-about-the-capitol-riot-or-the-matters-related-to-the-united-states-government/. The few cases addressing such issues are from district courts outside of the First Circuit. Nevertheless, these cases are instructive.

In *United States v. Collins*, No. 11-CR-00471-DLJ (PSG), 2012 U.S. Dist. LEXIS 35980 (N.D. Cal. Mar. 16, 2012), the district court judge noted the dearth of law in this area, writing that "[c]ase law addressing the limits on pretrial release conditions imposed by the First Amendment is limited, and indeed the parties have brought no such opinions to the court's attention. It nevertheless appears clear that the First Amendment can restrict pretrial conditions imposed on defendants." *Id*. at *13. The district court judge then wrote a decision in which he made it clear that any restrictions must be narrowly tailored to serve a compelling government interest and that political discourse would be the most protected area of speech.

The defendants in *Collins* were indicted for interfering with PayPal computers in retaliation for PayPal's blocking of service to Wikileaks. The court upheld a pretrial release condition barring the defendants from using Internet Relay Chat (IRC) because they had allegedly used IRC to coordinate the attacks described in the indictment. The court explained that:

> While any limitation on free speech must be imposed cautiously, and each defendant retains the presumption of innocence during the pretrial period, the IRC restriction in this case furthers a compelling government interest in protecting the public from further crimes coordinated through a means

4

> specifically addressed by the grand jury in the language of the indictment. The condition operates in a content-neutral fashion. The condition does not restrict political or any other discourse by any other means, even by use of other internet services such as email, blogging services such as Tumblr, chat other than IRC, or social networks such as Facebook or Google+. All of this suggests to the court that a restriction on IRC use, while permitting substantial internet use for purposes that include political discourse, strikes a reasonable balance between the legitimate and yet competing interests of the parties.

*Id*., at *13-15.

At the same time, the *Collins* court rejected a restriction on the defendants' use of Twitter because there was no connection between the defendants' use of Twitter and the alleged crimes.

> The court is not persuaded, however, that the restriction on Twitter use should be maintained. The indictment makes no mention of Twitter whatsoever. While the government's general proffer mentions Twitter, and courts regularly approve proceeding in detention proceedings by way of proffer, nothing proffered by the government sufficiently links any defendant's allegedly criminal activities to use of a Twitter account. In the absence of any indictment charge, any evidence, or even any specific proffer of such illicit activity by Twitter, the court is not persuaded that the restriction advances any legitimate interest in protecting the public's safety or prevent [sic] any defendant from fleeing. Under these circumstances, any illicit use of Twitter by any defendant may be adequately addressed by the monitoring approved elsewhere in this order.

*Id*., at *15.

The no contact provision imposed on DiMezzo fails under the standards followed in *Collins*. The indictments in this case say nothing about Free Talk Live or any talk show. Moreover, as far as the defense can determine at this point, there is no allegation anywhere in discovery that FTL was used as a means to commit any crime. And, undeniably, the speech on FTL is political discourse in a publicly available forum - exactly the kind of speech the judge in *Collins* would have found to be protected.

5

Another case addressing this kind of issue is United States v. Murtari, Nos. 5:07-CR-0428 (DEP), 5:08-CR-0059 (DEP), 5:08-CR-0060 (DEP), 2008 U.S. Dist. LEXIS 18880 (N.D.N.Y. Mar. 11, 2008). In *Murtari* the defendant was a fathers' rights activist who repeatedly protested at the federal building where the court was located. He was arrested for refusing to leave when ordered and for writing in chalk on government property. He was released pending trial on those charges with the specific conditions that he not enter the federal property without permission and that he not write in chalk on the property. He thereafter engaged in both of those activities and was charged with contempt. He challenged the contempt prosecutions on the grounds that the conditions of release violated his First Amendment rights.

The district court relied on a "reasonably necessary" standard in balancing the defendant's First Amendment rights with the objectives of the Bail Reform Act. The court found that in this specific situation the conditions of release were valid:

> … [I]n fashioning suitable conditions to govern the defendant's release pending trial on the various charges against him in this case, the court was required to do so in a manner which would result in no greater intrusion upon defendant's constitutional rights, including those guaranteed under the First Amendment, than reasonably necessary in order to effectuate the objectives of the Bail Reform Act, and to additionally insure defendant's compliance with the court's order. *Cf. United States v. Myers*, 426 F.3d 117, 124-25 (2d Cir. 2005) (examining terms of supervised release alleged to violate the defendant's constitutional rights)."

*Id.*, at *11.

The contrast between the *Murtari* case and Ms. DiMezzo's situation could not be more telling. Ms. DiMezzo has not violated any court order. Rather, she continues to comply with the no contact provision of her conditional release while using proper legal process to seek revision of the condition. In addition, as in the *Collins* comparison, she is

6

not challenging a condition which relates to her alleged criminal conduct. No one claims that FTL is a means to commit crimes. Lastly, and most importantly, Ms. DiMezzo seeks to engage in political and social discourse in a public forum. She does not seek to engage in criminal conduct such as trespassing at a federal building or damaging federal property by writing on it.

*Supervised Release Cases*

In an effort to find more case law, an imperfect analogy might be made to the supervised release context where defendants are under the supervision of the Office of Probation with specific conditions. Of course, there is a major difference: pretrial defendants are presumed to be innocent and have not been convicted of anything, whereas defendants on supervised release have been convicted of a crime. Therefore, although the defense will describe some cases from the supervised release context, the preliminary point is that a defendant's constitutional rights deserve greater protection in the pretrial context because there has been no finding of guilt.

That said, courts have recognized that even convicted defendants on supervised release retain a right to have their conditions limited to those that are reasonable.

The First Circuit has held that prohibitions on the use of the internet and access to pornography are improper if not reasonably necessary for rehabilitation. In *United States v. Perazza-Mercado*, 553 F.3d 65 (1st Cir. 2009), a defendant convicted of sexual contact with a minor challenged some of the special conditions tied to his supervised release. The First Circuit held, "given the nature of the offense and the characteristics of the defendant…that requiring Perazza-Mercado to leave his home in order to take advantage of many of the vocational and educational opportunities offered by the internet is a

greater deprivation of his liberty than is reasonably necessary for his rehabilitation." *Id.* at 73. The case was remanded for the district court to devise appropriate restrictions on the defendant's internet use in light of available monitoring technologies. *Id.* The First Circuit also found that "the imposition of the ban on the possession of adult pornography as a condition of supervised release, without any explanation and without any apparent basis in the record for the condition, constitutes an error that is plain." *Id.* at 78. The court held that the special conditions must cause "no greater deprivation of liberty than is reasonably necessary" to achieve the goals of supervised release, taking into account the the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3583(d)(1); *see also* 18 U.S.C. § 3553(a)(1). *Id.* at 69.

Subsequently, in *United States v. Ramos*, 763 F.3d 45 (1st Cir. 2014), the First Circuit vacated computer and internet restrictions as unduly restrictive because the defendant had not used a computer or the internet in connection with his offense or for any illegal purpose. *Id.* at 63. The appropriate test continued to be that from *Perazza-Mercado*: special conditions must cause no greater deprivation of liberty than is reasonably necessary to achieve the goals of supervised release and the conditions must be reasonably related both to these goals and to the nature and circumstances of the offense and the history and characteristics of the defendant. *Id.* at 60.

The First Circuit has used the "reasonably related" test when it comes to First Amendment challenges to supervised release. In *United States v. Roy*, 438 F.3d 140 (1st Cir. 2006), the court upheld restrictions on a defendant from having contact with his girlfriend or her children without the parole officer's approval. Roy challenged the

8

restriction as an intrusion on his First Amendment right of Free Association. The court reiterated that:

> … a special condition must entail 'no greater deprivation of liberty than is reasonably necessary' (citing *United States v. York*, 357 F.3d 14 (1st Cir. 2004)) to achieve the goals of supervised release; be consistent with any pertinent policy statements issued by the Sentencing Commission; and have adequate evidentiary support in the record…qualified, as always, by the statutory requirement that a condition invade a defendant's liberty no more than reasonably necessary in light of the goals the condition is meant to serve.

*Id*. at 144. Because "the special condition on Roy's supervised release serve[d] a permitted goal in a reasonable manner, the district court did not abuse its discretion in imposing it." *Id*. at 145.

*The Supreme Court's Packingham Case*

One final analogous context may be considered. The Supreme Court's decision in *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017) addressed the interplay between the First Amendment rights of convicted criminals and a state's interest in public safety. The Court found a North Carolina statute that made it a felony for anyone on the state's sex offender registry to access social media websites to be an impermissible restriction on First Amendment rights. Writing for the majority, Justice Kennedy said the North Carolina statute,

> … with one broad stroke bars access to what for many are the principal sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge. These websites can provide perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard.

*Id*. at 1737. The state failed to meet "its burden to show that this sweeping law is necessary or legitimate to serve" the preventive purpose of keeping convicted sex

offenders away from vulnerable victims. *Id.* Because the North Carolina law suppressed lawful speech, the law was invalid.

## MS. DIMEZZO'S REQUEST IS LIMITED TO THE RELIEF NECESSARY TO PROTECT HER RIGHTS WHILE STILL ADDRESSING THE GOVERNMENT'S CONCERNS.

The foregoing review of the law shows that the broad no contact provision preventing Ms. DiMezzo from hosting FTL with Ian Freeman is unconstitutional. Ms. DiMezzo asserts the most fundamental of First Amendment rights – the right to speak freely with others in a public place about political and social ideas of interest. Against her assertion of this right, the government cannot claim that she is engaging in any criminal conduct or any conduct which forms a basis for the charges in this case. The government simply cannot proffer any explanation of how preventing DiMezzo and Freeman from hosting FTL would be necessary to serve a compelling government interest.

Furthermore, the government's claimed interests, whatever they may be, will remain protected in every significant respect because Ms. DiMezzo does not seek complete abrogation of the no contact provision. Rather, she seeks only those changes necessary to allow her to host FTL. Specifically, she asks:

A. To be present together in person at the same physical location as Ian Freeman for the broadcast of Free Talk Live, half an hour before, during, and half an hour after, each broadcast.

B. To co-host the Free Talk Live show with co-defendant, Ian Freeman.

C. To talk about any subject during Free Talk Live, except the pending charges.

D. To communicate with Ian Freeman at any time in person, by email, or by text message regarding the broadcast of Free Talk Live, technical issues, staffing, content, or any other matter reasonably related to the broadcast of Free Talk Live.

These limited exceptions to the no contact provision do not threaten any government interest. Nor do they implicate public safety in any way. The court should, therefore, grant this motion and amend Ms. DiMezzo's conditions of release accordingly.

When contacted regarding the relief requested in this motion, Assistant United States Attorney Seth Aframe stated that the government objects to the motion.

Counsel for Ian Freeman has stated that he intends to join this motion.

The interests of the other co-defendants are not implicated by this motion.

The defense does not seek an evidentiary hearing unless the government disputes the facts asserted herein.

No further memorandum of law is submitted because the authority to grant the requested relief is stated herein.

WHEREFORE Ms. DiMezzo requests that her conditions of release be modified to allow her:

A. To be present together in person at the same physical location as Ian Freeman for the broadcast of Free Talk Live, half an hour before, during, and half an hour after, each broadcast.

B. To co-host the Free Talk Live show with co-defendant, Ian Freeman.

C. To talk about any subject during Free Talk Live, except the pending charges.

D. To communicate with Ian Freeman at any time in person, by email, or by text message regarding the broadcast of Free Talk Live, technical issues, staffing, content, or any other matter reasonably related to the broadcast of FTL.

Date: June 4, 2021.                                Respectfully submitted,

                                                   */s/ Richard Guerriero*
                                                   Richard Guerriero, Esq.
                                                   N.H. Bar ID. 10530
                                                   Lothstein Guerriero, PLLC
                                                   Chamberlain Block Building
                                                   39 Central Square, Suite 202
                                                   Keene, NH 03431
                                                   Telephone: (603) 352-5000
                                                   richard@nhdefender.com

CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to registered participants identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to the nonregistered participants on the date the document was signed by me.

   _                                               */s/ Richard Guerriero*
                                                   Richard Guerriero, Esq.