UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 21-cr-00041-JL |
| | ) | |
| ARIA DIMEZZO | ) | |

UNITED STATES' SENTENCING MEMORANDUM

I.   INTRODUCTION.

Aria DiMezzo was one of Ian Freeman's acolytes. The three other Freeman acolytes who have come previously before the Court for sentencing committed wire fraud by lying to banks to help Freeman operate his money laundering/unlawful money transmitting business.  They received non-incarcerative sentences.

DiMezzo was substantially more culpable than those prior defendants. Unlike them, DiMezzo operated her own unlicensed money transmitting business and the evidence presented at Freeman's trial demonstrated that, in the summer of 2020, Freeman arranged for DiMezzo to handle bitcoin transactions from some of his "clients."  DiMezzo's telephone contained photographs and other evidence of transactions involving the same people who were at the core of the money laundering allegations against Freeman for which he was convicted.

DiMezzo and the United States agreed that her conduct results in a total offense level 19 based on her guilty plea for operating an unlicensed money transmitting business. The United States further agreed to request a sentence within the applicable guideline range.  Because DiMezzo was involved in the money laundering transactions that were the most egregious part of this case and because DiMezzo has shown no remorse for her criminal conduct, the United States recommends that the Court sentence DiMezzo to 37 months, the high-end of the applicable guideline range.

1

II.    <u>MONEY-LAUNDERING CONDUCT</u>.

From June 2020 to January 2021, DiMezzo admitted that she operated an unlicensed money transmitting business.  DiMezzo further admitted that she found her customers by advertising on localbitcoins.com and through referrals from Ian Freeman. DiMezzo also acknowledged that her business unlawfully transmitted more than $1.5 and less than $3.5 million.  For that conduct alone, the sentencing guidelines recommend a sentence of between 30 and 37 months in federal prison.

The evidence adduced at Freeman's trial demonstrated, however, that DiMezzo did more than simply transmit otherwise lawful funds without a license.  The evidence showed that Freeman's money-laundering business encountered a problem in the spring of 2020 because Freeman had exhausted his ability to obtain bank accounts.  To overcome this problem, Freeman enlisted DiMezzo's help to continue the operation of his money-laundering activities.

In particular, DiMezzo opened accounts in the name of the Reformed Satanic Church and Freeman made funds available to DiMezzo so that she had the upfront capital to help him launder money for his "clients." A letter written by Freeman's bookkeeper, Melanie Neighbors, confirmed that DiMezzo had access to at least $1 million of funds from Freeman for this purpose. *See* MN_supp_0000000767.

Soon thereafter, various scammers for whom Freeman had previously laundered funds began contacting DiMezzo to purchase bitcoin.  On DiMezzo's phone, there was evidence of Freeman expressly making the referrals and photographs of several of Freeman's elderly victims from his Telegram folder.  In exchange for converting proceeds of scams and frauds to bitcoin, Freeman and DiMezzo charged criminals a fee ranging from 10 to 20 percent. In fact, on DiMezzo's phone, she saved customers' contact information with the fee that she and Freeman

charged. For example, Victim 1's name would be saved in DiMezzo's phone as "Victim 1 12%" to indicate that she would charge 12% to convert that victim's cash to bitcoin.  Freeman and DiMezzo shared the profits of this endeavor. Just as the evidence at trial allowed the jury to conclude that these customers were scam victims for whom Freeman laundered money, the evidence against DiMezzo would permit the same conclusion.  Below are several photographs from DiMezzo's telephone that depict people also found in Freeman's Telegram folder.






In addition, DiMezzo had a full understanding of the nature of Freeman's business, and the fact that the anonymity Freeman provided appealed to scammers. For example, in a video in which DiMezzo described her business, she emphasized, "don't ever sell to someone who wants to tell you why they want the bitcoin…. The kind of person who tells you that they want bitcoin to buy a burger is the same kind of person who will tell you they want bitcoin to buy heroin or guns or whatever."[1] DiMezzo ascribed to Freeman's "golden rule" – don't ask questions and look the other way in the face of obviously suspicious transactions.[2]

And, in fact, DiMezzo's unlicensed money transmitting business facilitated the loss of victims' life savings. One victim, whose photo was found on DiMezzo's phone, reported to law enforcement that after his loss, he was living in his broken-down car and had recently attempted suicide. *See* 18R082_FBI-0021963. Another victim testified at Freeman's trial that because of what happened she "was in financial disaster" and felt, "really stupid, ignorant, used." Freeman Trial Trans. December 12, 2022, Afternoon Session, 101-102. A third victim described how, in addition to losing substantial sums of money, he now can't shake the feeling that he can no longer trust people.[3]  Photo after photo of clearly vulnerable, mostly elderly people on DiMezzo's phone show that DiMezzo, like Freeman, knew the harm her business was causing.

---

[1]     The government has provided this recording to defense counsel and will present it as an exhibit at the upcoming sentencing hearing.

[2]     For example, in one of the transactions, DiMezzo is dealing with a third-party ("Raymond Miller") who is arranging for H.J., one of the elderly victims that testified at trial, to send money.  DiMezzo chastises "Miller" that his "guy" is not following the instructions to send the required selfie. DiMezzo never asks about why "Miller"  was having some other person send her large sums of money. Gov't Trial Exhs.1571 A-B.

[3]     This victim, H.J., testified at Freeman's trial, and submitted a victim impact statement with respect to that sentencing, which has been provided to the defendant.  DiMezzo helped launder more than $600,000 of H.J.'s money, sending an equivalent amount of bitcoin to a third-party, no questions asked, less her cut of course.

III.     <u>DIMEZZO'S LACK OF REMORSE.</u>

In her many television and radio appearances since being charged with this crime, DiMezzo has yet to show any remorse for the harm that she caused to these victims. After watching scam victims testify at Freeman's trial, she appeared on Freeman's radio show, ridiculing an elderly woman who lost her life savings over a one-week period to someone she believed she loved. DiMezzo called her "moronic," "an idiot," and "stupid."[4] DiMezzo clearly doesn't care about the harm she facilitated.

In another radio appearance after pleading guilty, DiMezzo continued to shirk responsibility. After talking about a victim whose money both she and Freeman laundered, she blamed the FBI for their failure to catch the victim's overseas scammer, claiming the FBI "want[s] the scammers to exist!" She continued, responding to Freeman, "[e]ven if they target you, and target me, and they take all of us out… that's not doing a damn thing to get rid of the visa prepaid cards that were being used for this exact purpose." She later stated that the "federal government is in bed with these fraudsters!" This is just one of numerous examples of DiMezzo's failure to take responsibility for her role in making the scammers harder for law enforcement to catch by allowing them to anonymously launder their funds. By blaming the scammers, the FBI, and the federal government, she has quite publicly made clear that she takes no responsibility and has no remorse for her actions.

---

[4] The government has provided these recordings to defense counsel and will present them as exhibits at the upcoming sentencing hearing.

IV.     <u>A 37-MONTH SENTENCE IS APPROPRIATE</u>.

        The undisputed sentencing guidelines in this case only account for the defendant's

operation of an unlicensed money transmitting business. That crime is a serious one. Businesses

that exchange U.S. currency for bitcoin must register with FinCEN and comply with the Bank

Secrecy Act. The Bank Secrecy Act imposes obligations on money transmitters to ensure that

their services are not used to launder money or otherwise promote criminal activity. The purpose

of these requirements is to prevent exactly the situation that Freeman created here—a business

that catered to scammers and allowed them to anonymously launder money. The sentencing

guidelines appropriately reflect that serious crime.

        DiMezzo's conduct merits a high-end sentence because not only did she operate an

unlicensed money transmitting business that processed millions of dollars, but the evidence at

Freeman's trial also showed that she knew that her business was used to launder money. A 37-

month sentence appropriately reflects this defendant's role in helping fraudsters and scammers

send vulnerable Americans' money overseas and her complete lack of remorse for or recognition

of the harm she caused.

                                        Respectfully submitted,

                                        JANE E. YOUNG
                                        United States Attorney

Dated: April 14, 2023

                                        <u>/s/ Georgiana L. MacDonald</u>
                                        Assistant U.S. Attorney
                                        MA Bar # 685375
                                        53 Pleasant Street, 4th Floor
                                        Concord, New Hampshire 03301
                                        603-225-1552
                                        georgiana.macdonald@usdoj.gov

/s/ John J. Kennedy
Assistant U.S. Attorney
NH Bar # 19557
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
603-225-1552
john.kennedy2@usdoj.gov

/s/ Seth R. Aframe
Assistant U.S. Attorney
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
603-225-1552